**Howard CADY, Plaintiff,**

v.

**TWIN RIVERS TOWING COMPANY and Consolidation Coal Company, Defendants.**

Civ. A. No. 70–527.

United States District Court,
W. D. Pennsylvania.

March 21, 1972.

Rose, Schmidt & Dixon, Pittsburgh, Pa., for plaintiff.

Hymen Schlesinger, Pittsburgh, Pa., for defendants.

OPINION and ORDER

McCUNE, District Judge.

This is a maritime personal injury case. Jurisdiction is based on the Jones Act, 46 U.S.C.A. § 688 and 28 U.S.C.A. § 1333. In addition to the personal injury counts, plaintiff has also asserted against defendant Consolidation Coal Company a claim for damages for

wrongful demotion from pilot to mate (Count III) and a claim against both defendants for wrongful discharge (Count IV). We are presently confronted with defendant Consolidation's motion for summary judgment on Counts III and IV and defendant Twin Rivers' motion for summary judgment on Count IV.

As a basis for their motions both defendants rely on the existence of union contracts containing grievance procedures to which plaintiff was subject, both at the time of his demotion and at the time of his discharge. Defendants have submitted several affidavits in support of their respective motions. Plaintiff has not contested the factual assertions contained in these affidavits. We conclude that the failure to counter the affidavits is tantamount to conceding the movant's assertions.

In October of 1968, plaintiff was employed as a pilot by defendant Consolidation. Plaintiff was a member of International Organization of Masters, Mates and Pilots, Inc., which at that time was the recognized exclusive bargaining agent for all masters, mates and pilots employed by Consolidation. The terms of plaintiff's employment in October of 1968 were governed by a contract between Consolidation and the International. Article VI of that agreement provided a grievance procedure for employees who were dismissed or disciplined. The last step of that procedure was binding arbitration.

Plaintiff was suspended on October 4, 1968. In accordance with the grievance procedure, officials of Consolidation and the International conferred on plaintiff's case. Plaintiff's case did not proceed to arbitration because the dispute was settled by agreement of the parties before arbitration was invoked. That settlement provided that plaintiff would be demoted from pilot to mate. In his deposition plaintiff asserts that he was told by a union representative that the case would go to arbitration. However the case was in fact never arbitrated.

Subsequent to this settlement and sometime before December of 1969, plaintiff ceased to be employed by Consolidation and became an employee of Consolidation's wholly owned subsidiary, Twin Rivers. While employed by Twin Rivers, plaintiff was a member of the National Maritime Union of America (AF of L–CIO). As the exclusive bargaining agent for plaintiff and the other members of his bargaining unit, the Maritime Workers had negotiated a contract with defendant Twin Rivers. The agreement included a provision for processing grievances about certain aspects of the employment relationship including discharges. The procedure provided for meetings of union and company officials and finally in the event no settlement could be reached, for final and binding arbitration of the dispute.

In December of 1969, plaintiff was suspended. A hearing held in January of 1970, resulted in a decision by Twin Rivers to discharge plaintiff. The union was notified of this decision but elected not to take the matter to arbitration.

The facts thus stated present us with one question—is plaintiff barred from bringing suit for demotion and discharge, both issues having been considered and resolved in accordance with grievance procedures set forth in governing union contracts.

■■ The law is clear that an employee desiring to express a grievance under a contract must at least attempt to utilize grievance procedures provided in the agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). As the court stated there:

"Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant. LMRA § 203(d), 29 U.S.C. § 173(d)." Republic Steel Corp. v. Maddox, 379 U.S. 650 at 653, 85 S.Ct. 614 at 616.

Subsequently in its decision in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967) the court defined the area in which union members would be permitted to bring suit for grievances even though a governing contract contained a grievance procedure. There the court held that in order to sue for wrongful discharge or other breach of the contract when the contract grievance procedure had not been exhausted, the employee must prove that the union breached its duty of fair representation in dealing with the employee's grievance, Vaca v. Sipes, 386 U.S. 171 at 186, 87 S.Ct. 903, 17 L.Ed.2d 842. This means that the union cannot arbitrarily ignore the grievant. It does not mean that the union must carry the grievance to arbitration, Vaca v. Sipes, 386 U.S. 171 at 191, 87 S.Ct. 903, 17 L.Ed.2d 842. Lomax v. Armstrong Cork Co., 433 F.2d 1277 (5th Cir. 1970). As the employee's representative, the union may effect settlement of a grievance short of arbitration or for reasons of policy may determine that a particular grievance should not go to arbitration. In either case, provided it has not breached its duty of fair representation, the employee is bound by the union's action. See Brandt v. United States Lines, Inc., 246 F.Supp. 982 at 983–984 (S.D.N.Y.1964).

Plaintiff has pointed to a recent decision by the Supreme Court, United States Bulk Carriers v. Arguelles, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971) for the proposition that a seaman is not required to pursue his grievance under the terms of the contract prior to bringing suit. We do not believe that the case supports plaintiff's position. *Arguelles* dealt with a statutory remedy provided seamen for recovery of wages due. All the court held was that the express statutory grant of a remedy in 46 U.S.C.A. § 596 was not by implication displaced by § 301 of the Taft-Hartley Act, 29 U.S.C.A. § 185(a). We are unaware of any statutory remedy for discharges comparable to 46 U.S. C.A. § 596.

■   Plaintiff here has not failed to exhaust contract remedies. On the contrary he has exhausted the remedies his union contract afforded him. In the first instance, his demotion resulted from a settlement prior to arbitration. The union admittedly was involved in the grievance on plaintiff's behalf and there has been no allegation that the union acted in bad faith in representing him. Plaintiff was bound by the good faith settlement effected by his bargaining agent in the case of his demotion.

The same is true with regard to Count IV. The union filed a grievance on behalf of plaintiff and met with company representatives. The demand of the union for plaintiff's reinstatement was denied. Plaintiff in his deposition admits that the Union advised him that his case had been considered and the union decided not to submit plaintiff's discharge to arbitration. There is no allegation that the union acted in bad faith in reaching this decision.

The good faith disposition of plaintiff's demotion and later discharge under the grievance procedures of governing labor contracts bar plaintiff's suit on these claims. Defendant Twin Rivers' motion for summary judgment on Count IV is therefore granted. Defendant Consolidation's motion for summary judgment on Count III is also granted. We also grant Consolidation's motion for summary judgment on Count IV because Consolidation was not plaintiff's employer at the time of discharge.